UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| RUTH WILLIAMS, et al. | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Case No. 4:22-cv-00216-SEP |
| v. | ) |
| | ) |
| CENTENE CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

The Employee Retirement Income Security Act of 1974 (ERISA) imposes a duty of loyalty on fiduciaries of certain investment plans. Plaintiffs Ruth Williams, Tovah Allen, Carolyn Ross, Alicia Bates, and Tracy Young participated in one such plan through their employer, Centene Corporation. They filed this class-action lawsuit against Defendants Centene Corporation, the Board of Directors of Centene Corporation, the Centene Corporation Retirement Plan Investment Committee, and John Does 1-30 (the unnamed members of the committee and the board, and any other unknown fiduciaries), alleging that Defendants breached their fiduciary duties under the Act. Before the Court are Defendants' Motion to Dismiss Plaintiffs' Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, Doc. [33], and the United States Chamber of Commerce's Motion for Leave to Participate as Amicus Curiae, Doc. [38]. For the reasons set forth below, both motions are granted.

### FACTS AND BACKGROUND[1]

Centene Corporation is the sponsor for the Centene Management Corporation Retirement Plan (the Plan), a "defined contribution" or "individual account" plan within the meaning of ERISA, 29 U.S.C. § 1002(34), which provides investment funds for participating employees. Doc. [28] ¶¶ 24, 43, 52. Centene and its board appointed an investment committee to manage the investments under the Plan and prices for recordkeeping and administrative services. *Id.* ¶ 25. Strategic Advisers, Inc., runs the Plant's managed account service, and Fidelity Management Trust Company, keeps records for the Plan. *Id.* ¶ 80. As of 2020, the Plan had

---

[1] For purposes of a motion to dismiss, the Court assumes that the factual allegations in the complaint, Doc. [1], are true. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

over 63,000 participants and over $3.1 billion dollars in assets under management.  *Id.* ¶ 94.  Plaintiffs all participated in the Plan during their employment with Centene.  *Id.* ¶¶ 17-21.

In their first claim for relief, Plaintiffs allege that the investment committee breached its fiduciary duty of prudence, *id.* ¶¶ 112-18, and in their second, that Centene and its board failed to adequately monitor the investment committee, *id.* ¶¶ 120-24.  In support of their first claim, Plaintiff allege that Defendants imprudently maintained funds with excessive expense ratios, *id.* ¶¶ 65-70, imprudently allowed the plan's "total plan cost" to balloon, *id.* ¶¶ 71-74, imprudently failed to control the Plan's recordkeeping fees and administrative costs, *id.* ¶¶ 75-100, and imprudently maintained underperforming investment options in the Plan, *id.* ¶¶ 101-10.

In support of their allegation that Defendants maintained funds with excessive expense ratios, Plaintiffs allege that 11 of the plan's funds have expense ratios that substantially exceed the "ICI Median" and "ICI Average."  *Id.* ¶¶ 66-67.  ICI appears to stand for Investment Company Institute.  *Id.* ¶ 71.  Plaintiffs assert that ICI "developed a total plan cost measure that includes all fees on the audited Form 5500 reports as well as fees paid through investment expense ratios."  *Id.*  The Institute allegedly determined that, for a Plan with assets in excess of a billion dollars, the average asset weighted total plan cost is 0.22% of total plan assets.  *Id.* ¶ 73.  Plaintiffs allege that an "indication that the Plan was poorly run and lacked a prudent process for selecting and monitoring the Plan's investments is that it had a [total plan cost] of more than 0.46%," which is "more than 109% higher than the average."  *Id.* ¶ 74.

Plaintiffs also allege that the Plan's "excessive" recordkeeping and administrative costs were indicative of imprudent fee monitoring.  *Id.* ¶¶ 75-100.  In support, Plaintiffs point to Defendants' use of revenue sharing, a practice by which Plan recordkeeping expenses are paid indirectly by the Plan's investments.  *Id.* ¶¶ 84-86.  Plaintiffs allege "there is little to suggest that Defendants conduct an appropriate RFP at reasonable intervals" in order to shop around for lower fees.  *Id.* ¶¶ 89-90.  Plaintiffs also point to a stipulation entered into by Fidelity in another case as evidence that "the Centene Plan fiduciaries should not have been paying more than $21 per participant in recordkeeping and administration fees."  *Id.* ¶¶ 93-97.  And finally, Plaintiffs compare Centene's alleged fees per participant with several comparator plans that allegedly enjoyed lower fees per participant.  *Id.* ¶¶ 99-100.

Finally, the Amended Complaint alleges that the investment committee should have replaced several funds in the Plan because they underperformed.  *Id.* ¶¶ 101-10.  Plaintiffs

2

identify eight underperforming funds and compare them with other funds that were cheaper and performed better. *Id.* ¶¶ 104-105.  Plaintiffs provide no information regarding any of the funds' holdings, investment style, or strategy, but they do allege that the challenged and comparator funds are "in the same investment style." *Id.* at 28.

In support of their second claim, that Centene and its board failed to adequately monitor the investment committee, Plaintiffs allege that Centene and its board breached their duty to monitor the investment committee and the processes by which Plan investments were evaluated. *Id.* ¶¶ 120-23.  As a result of their failure to monitor, Plaintiffs contend, the Plan sustained millions of dollars of losses. *Id.* ¶ 124.

In response to the Amended Complaint, Defendants filed their Motion to Dismiss, Doc. [33], arguing that, even if true, Plaintiffs' allegations fail to state a claim.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted).  The requirement of facial plausibility means the factual content of the plaintiffs' allegations must "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018) (quoting Iqbal, 556 U.S. at 678).  The Court must grant all reasonable inferences in favor of the nonmoving party. *Lustgraaf v. Behrens*, 619 F.3d 867, 872-73 (8th Cir. 2010).  Ordinarily, only the facts alleged in the complaint are considered for purposes of a motion to dismiss; however, materials attached to the complaint may also be considered in construing its sufficiency. *Reynolds v. Dormire*, 636 F.3d 976, 979 (8th Cir. 2011).

When ruling on a motion to dismiss, a court "must liberally construe a complaint in favor of the plaintiff. . . ." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 862 (8th Cir. 2010). But if a claim fails to allege one of the elements necessary to recover on a legal theory, the court must dismiss that claim for failure to state a claim upon which relief can be granted. *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 355 (8th Cir. 2011).  "Threadbare recitals of a cause of action's elements, supported by mere conclusory statements," do not suffice. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Although courts must accept all factual allegations as

3

true, they "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (citation omitted); *Iqbal*, 556 U.S. at 677-78.

## DISCUSSION

### I.  Motion for Leave to Participate as Amicus Curiae

On June 24, 2022, the United States Chamber of Commerce filed a motion for leave to file a brief as *amicus curiae* in support of Defendants' motion to dismiss. Doc. [38]. Plaintiffs oppose the motion. Doc. [39].

"District Courts have broad discretion in deciding whether to accept amicus briefs." *Gulf Underwriters Ins. Co. v. City of Council Bluffs*, 2011 WL 13285400, at *5 (S.D. Iowa Feb. 18, 2011) (quoting *Jamaica Hosp. Med. Ctr. v. United Health Grp.*, 584 F. Supp. 2d 489, 497 (E.D.N.Y. 2008)). "An amicus brief should normally be allowed when . . . the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide." *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997). The Chamber of Commerce has articulated an ability to provide such information and perspective. *See Kistler v. Stanley Black & Decker, Inc.*, 2023 WL 1827734, at *2 (D. Conn. Jan. 25, 2023) (granting the Chamber of Commerce leave to file an amicus brief in an ERISA action) ("The Chamber of Commerce, *inter alia*, provides a unique perspective as 'the world's largest business federation' with a diverse membership."). Thus, the motion is granted.

### II.  Motion to Dismiss

#### A.  First Claim for Relief:  Breaches of Fiduciary Duty of Prudence

ERISA imposes a duty of prudence on plan fiduciaries like Centene's investment committee. The committee must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). "This statutory duty of prudence establishes 'an objective standard' that focuses on 'the process by which' decisions are made, 'rather than the results of those decisions.' A prudently made decision is not actionable, in other words, even if it leads to a bad outcome." *Davis v. Washington Univ. in St. Louis*, 960 F.3d 478, 482 (8th Cir. 2020) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 595 (8th Cir. 2009)).

At the motion-to-dismiss stage, the complaint suffices if the Court can "infer from what is alleged that the process was flawed"; the complaint need not "directly addres[s] the process by

which the [p]lan was managed." *Braden*, 588 F.3d at 596.  In this "context-specific" inquiry, *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 740 (2022), "'[c]ircumstantial allegations about the fiduciary's methods' based on the 'investment choices a plan fiduciary made' can be enough." *Davis*, 960 F.3d at 483 (quoting *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822 (8th Cir. 2018)).  But plaintiffs alleging a breach of fiduciary duty with circumstantial allegations must "provide a sound basis for comparison—a meaningful benchmark" to show that a prudent fiduciary in like circumstances would have acted differently.  *Meiners*, 898 F.3d at 822.

Defendants argue that none of Plaintiffs' theories—that Defendants imprudently maintained funds with excessive expense ratios, imprudently allowed the Plan's "total plan cost" to balloon, imprudently failed to control the Plan's recordkeeping fees and administrative costs, and imprudently maintained underperforming investment options in the Plan—adequately supports their breach-of-fiduciary-duty claim.  The Court agrees.

   1. *Expense Ratios*

As described above, Plaintiffs allege that many of the plan's funds charge excessive investment-management fees and that "[t]he high cost of the Plan's funds is also evident when comparing the Plan's funds to the average fees of funds in similarly-sized plans."  Doc. [28] ¶ 66.  For support, Plaintiffs rely exclusively on the "ICI Median" and "ICI Average."  That reliance is misplaced.  *See Matousek v. MidAmerican Energy Co.*, 51 F.4th 274, 281-82 (8th Cir. 2022).  "[A] complaint cannot simply make a bare allegation that costs are too high, or returns are too low.  Rather, it 'must provide a sound basis for comparison—a meaningful benchmark.'"  *Davis*, 960 F.3d at 478 (quoting *Meiners*, 898 F.3d at 822).  As this Court and many others have held, the ICI data fail to provide such a benchmark.  *See Riley v. Olin Corp.*, 2022 WL 2208953, at *5 (E.D. Mo. June 21, 2022) (collecting cases).  "The Eighth Circuit requires the Court to thoroughly compare challenged funds and putative benchmark funds with regard to fund holdings, investment style, and strategy—and neither the Plaintiffs nor the ICI data provide any of this required information."  *Id.*  Thus, considered in its totality, the Amended Complaint fails to state a breach-of-fiduciary-duty claim under an excessive-investment-fees theory.

   2. *Total Plan Cost*

Plaintiffs allege that a research company, ICI, "developed a total plan cost measure that includes all fees on the audited Form 5500 reports as well as fees paid through investment expense ratios."  Doc. [28] at ¶ 71.  The company apparently determined that, for a Plan with

5

assets in excess of a billion dollars, the average asset weighted total plan cost is 0.22% of total plan assets.  *Id.* ¶ 73.  Plaintiffs allege that an "indication that the Plan was poorly run and lacked a prudent process for selecting and monitoring the Plan's investments is that it had a [total plan cost] of more than 0.46%."  *Id.* ¶ 74.

A general industry average, without more, cannot serve as a meaningful benchmark.  *Matousek*, 51 F.4th at 280.  "To plead a meaningful benchmark, 'the plaintiff must plead that the administrative fees are excessive in relation to the *specific services* the recordkeeper provided to the *specific plan* at issue.'"  *Riley*, 2022 WL 2208953, at *4 (quoting *Perkins v. United Surgical Partners Int'l Inc.*, 2022 WL 824839, at *6 (N.D. Tex. Mar. 18, 2022)).  Plaintiffs allege nothing of the sort.  Thus, considering the Complaint in its entirety, Plaintiffs fail to state a breach-of-fiduciary-duty claim under a total-plan-cost theory.

3.  *Excessive recordkeeping fees and administrative costs*

Plaintiffs allege that the Plan's recordkeeping and administrative costs were excessive, which suggests a breach of fiduciary duties.  Doc. [28] ¶¶ 75-100.  In support, Plaintiffs point out Defendants' use of revenue sharing, a practice by which Plan recordkeeping expenses are paid indirectly by the Plan's investments.  *Id.* ¶¶ 84-86.  According to Plaintiffs, "there is little to suggest that Defendants conduct an appropriate RFP at reasonable intervals" in order to shop around for lower fees.  *Id.* ¶¶ 89-90.  Then, Plaintiffs allege that Fidelity entered into a stipulation in another case demonstrating that "the Centene Plan fiduciaries should not have been paying more than $21 per participant in recordkeeping and administration fees."  *Id.* ¶¶ 93-97.  And finally, Plaintiffs compare Centene's alleged fees per participant with several comparator plans that allegedly enjoyed lower per participant fees.  *Id.* ¶¶ 98-100.

Those allegations do not state a claim.  First, Plaintiffs acknowledge that "a revenue sharing approach is not *per se* imprudent."  *Id.* at 86.  In fact, revenue sharing, a "common and acceptable investment industry practic[e]," "frequently inure[s] to the benefit of ERISA plans."  *Tussey v. ABB, Inc.*, 746 F.3d 327, 336 (8th Cir. 2014).  Second, Plaintiffs do not actually allege that Defendants failed to conduct an RFP.  Instead, they argue that "there is little to suggest" that Defendants had done so.  That allegation accomplishes little, especially since "allegation[s] that the Plan fiduciaries were required to solicit competitive bids on a regular basis has no legal foundation."  *Riley*, 2022 WL 2208953, at *5 (citation omitted).

6

Third, Plaintiffs rely heavily on a stipulation filed by the parties in *Moitoso v. FMR LLC*, No. 1:18-cv-12122 (D. Mass.), in which Fidelity stated that the services it provided to its own retirement plan had a market value of $14 to $21 per participant, and that those services are not "broader or more valuable" than the services received by other plans for whom Fidelity serves as recordkeeper. As several courts have already held, "Fidelity took that position in litigation regarding the recordkeeping services it provided to *its own plans*. [Plaintiffs] [do] not explain how the services that Fidelity provided to its own plans are equivalent to the services Fidelity provided to the Plan at issue in this case. Without more, the $14-21 figure cannot serve as an adequate market comparator." *Wehner v. Genentech, Inc.*, 2021 WL 507599, at *6 (N.D. Cal. Feb. 9, 2021); *see also Johnson v. PNC Fin. Servs. Grp., Inc.*, 2021 WL 3417843, at *4 (W.D. Pa. Aug. 3, 2021). Because the stipulation does not provide a meaningful comparison, it does not support an inference of imprudence.

Fourth, Plaintiffs compile a list of eight other plans that allegedly pay less in per-participant recordkeeping fees. "[T]he key to stating a plausible excessive-fees claim is to make a like-for-like comparison." *Matousek*, 51 F.4th at 279 (internal citation omitted). The Eighth Circuit has highlighted that not all recordkeeping and administrative fees are apples-to-apples. *See id.* (noting that per-participant fees sometimes cover more than just standard recordkeeping services). Despite the case law, the Amended Complaint is silent as to which recordkeeping services those eight other plans received. In other words, Plaintiffs fail to "plead that the administrative fees are excessive in relation to the *specific services* the recordkeeper provided to the *specific plan* at issue." *See Riley*, 2022 WL 2208953, at *4 (citation omitted). The Court rejects Plaintiffs' eight-plan list as a sound basis for comparison, because it lacks sufficient detail. *See id.*

Accepting all factual allegations as true, the Court still may not draw the reasonable inference that the investment committee allowed Plaintiffs to pay excessive fees. Thus, Plaintiffs do not state a breach-of-fiduciary-duty claim under an excessive-fees theory.

### 4. Fund underperformance

Finally, according to the Amended Complaint, the investment committee should have replaced several funds in the Plan because they underperformed. As already mentioned, in "an investment-by-investment challenge like this one, a complaint cannot simply make a bare allegation that costs are too high, or returns are too low. Rather, it 'must provide a sound basis

7

for comparison—a meaningful benchmark.'" *Davis*, 960 F.3d at 478 (quoting *Meiners*, 898 F.3d at 822). Plaintiffs attempt to provide that benchmark by identifying eight underperforming funds and comparing them with other funds that were cheaper and performed better in the market. Plaintiffs provide no information regarding any of the funds' holdings, investment style, or strategy. Instead, the Amended Complaint merely alleges that the challenged and comparator funds are "in the same investment style." Doc. [28] at 28.

Plaintiffs' comparisons establish only that the "marginally cheaper, comparators fund[s] performed better than [Centene]'s selected fund[s] at the three- and five- year marks." *Riley*, 2022 WL 2208953, at *7. Allegations "that costs are too high, or returns are too low" fail to support an inference of misconduct. "For circumstantial allegations to support a breach-of-fiduciary duty claim, the Eighth Circuit requires the Court to thoroughly compare the challenged fund with the putative benchmark fund, paying special attention to each fund's holdings, investment style, and strategy." *Id.* (citing *Davis*, 960 F.3d at 484-87). Plaintiffs do not explain how their proposed funds serve as sound bases for comparison to Centene's chosen funds. And Plaintiffs "provide none of the information courts regularly consider when determining whether a plaintiffs state an ERISA breach-of-fiduciary-duty claim, like fund prospectuses." *Id.* (citing *Davis*, 960 F.3d at 484 n.3).

Plaintiffs' allegations do not provide a meaningful benchmark on the basis of which the Court could evaluate the plausibility of their claim. Thus, considering the Amended Complaint in its totality, the Court concludes that Plaintiffs do not state a breach-of-fiduciary-duty claim under the theory that Centene retained underperforming funds.

### B.      Second Claim for Relief: Failure to Adequately Monitor Other Fiduciaries

Defendants move to dismiss Plaintiff's failure-to-monitor claim against Centene and its board because that "claim is derivative and fails because Plaintiffs have not pled an underlying breach of fiduciary duty." Doc. [34] at 20. Plaintiffs' only argument against dismissal presumes that they state a breach-of-fiduciary-duty claim against the investment committee. Doc. [41] at 22. Because they fail to state such a claim, the failure-to-monitor claim is dismissed. *See Brown v. Medtronic*, 628 F.3d 451, 461 (8th Cir. 2010) ("[N]either of these [derivative] claims can survive without a sufficiently pled theory of an underlying breach.") (internal citations omitted).

### CONCLUSION

For the foregoing reasons, the Amended Complaint fails to state a claim.

Accordingly,

**IT IS HEREBY ORDERED** that the United States Chamber of Commerce's Motion for Leave to Participate as Amicus Curiae, Doc. [38], is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant's Motion to Dismiss, Doc. [33], is **GRANTED**.[2]

A separate order of dismissal accompanies this Memorandum and Order.

Dated this 31st day of March, 2023.

_____
SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE

---

[2] Plaintiffs' informal request for leave to further amend their Amended Complaint is denied.  *See* Doc. [41] at 22; *Misischia v. St. John's Mercy Health Sys.*, 457 F.3d 800, 805 (8th Cir. 2006); *see also* E.D. Mo. L.R. 4.07.